UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 2:21-CR-111 |
| | ) | |
| vs. | ) | |
| | ) | |
| CHRISTOPHER BERRY, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Before the Court are Defendant's Motion to Suppress Evidence, Amended Motion to Suppress Evidence, and Memorandum in Support [Docs. 15-16 & 25] in which he seeks the suppression of all evidence seized or which otherwise resulted from the search of his person and vehicle conducted by law enforcement on October 15, 2019. The United States filed a Response in Opposition to Defendant's Motions [Doc. 20]. The Court conducted an evidentiary hearing on the motions on April 12, 2022. Defendant and his counsel, Donald E. Spurrell, Esq., and Assistant United States Attorney B. Todd Martin, Esq. were present for the hearing. Officer Breven Addington of the Kingsport Police Department ("KPD"), former KPD Officer Steven Blake Good, now with the Tennessee Highway Patrol, and Defendant, testified at the hearing.

This matter is before the Court pursuant to 28 U.S.C. § 636(b) and the standing orders of the District Court for a Report and Recommendation. For the reasons stated herein, the undersigned **RECOMMENDS** that the Motions to Suppress [Docs. 15 & 25] be **DENIED**.

I.  BACKGROUND

On October 13, 2021, a federal grand jury returned an Indictment [Doc. 3] against Defendant charging him with one (1) count of possession with intent to distribute 5 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); one (1) count of possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A); and one (1) count of possession of a firearm and (1) count of possession of ammunition, knowing that he had previously been convicted of a misdemeanor crime of domestic violence, both in violation of 18 U.S.C. § 922(g)(9). In his Motions and supporting Memorandum [Docs. 15-16 & 25], Defendant primarily argues that he was unlawfully seized and detained on October 15, 2019, and for that reason all items discovered during the subsequent search of his person and vehicle should be suppressed.

II.  FINDINGS OF FACT

a.  **Testimony of Officer Breven Addington**

Officer Breven Addington ("Officer Addington") received a bachelor's degree in criminal justice from Middle Tennessee State University ("MTSU"), where he was also a member of the ROTC. He then completed the Walters State police academy and joined the Kingsport Police Department ("KPD") in 2015. On October 15, 2019, Officer Addington was patrolling at the Americourt Motel on American Way in Kingsport, Tennessee because of an increase in criminal activity there, including drug crimes and vehicle thefts. Officer Addington was in uniform, and his marked police cruiser was parked in the Americourt parking lot.

At approximately 2:00 a.m., Officer Addington observed a car begin to pull into the Americourt parking lot. The car's headlights cast over Officer Addington's marked police car, then immediately pulled back out of the parking lot and back onto American Way. Officer Addington testified that it appeared the car changed direction upon noticing the police cruiser in the parking lot, which he found to be suspicious. Adding to Officer Addington's suspicion was the fact that American Way is a dead end with only a daycare center, industrial park, and public park past the Americourt, none of which were open at 2:00 a.m. After the suspicious car turned back onto American Way, Officer Addington decided to move his patrol car to a less conspicuous area in the parking lot. A few minutes later, the same car came down American Way driving much slower and pulled back into the parking lot. The driver of the car then backed into a parking space near room 213. Officer Addington's suspicion was further heightened when the driver backed in because he found that people tend to back in when a car is stolen or has a stolen license plate to make it more difficult for the license plate to be observed. The engine of Officer Addington's patrol car was not running, and he heard Defendant turn off the engine of his car.

Officer Addington testified that he did not block Defendant's car in but rather approached Defendant's vehicle and asked him if he had time to speak with him. Officer Addington stated that Defendant agreed to speak with him and during the exchange the officer did not raise his voice or have his hand on his weapon. He further stated that he did not ask Defendant to place his hands on the steering wheel.

On cross examination, Officer Addington was asked whether he used his patrol car's "takedown light" on the lightbar which would have illuminated the area in front of the patrol car and shined this very intense light in Defendant's eyes. Officer Addington testified that he does not recall using the light, although it is possible, and went on to explain that it was unlikely because

while doing so would have resulted in Defendant being able to see Officer Addington's exact location as he approached Defendant, it would also have resulted in Defendant not being able to clearly identify that he was a police officer, leaving Defendant without the ability to determine who was approaching him. Officer Addington also could not recall whether he used his flashlight nor how far down Defendant's window was and whether he asked Defendant to roll it down or if he did so voluntarily.

Officer Addington advised that while speaking with Defendant, he explained to him that there had been a lot of crime in the area and then asked Defendant what he was doing at the motel. Defendant told Officer Addington that he was there to pick up a friend and take him to the grocery store but was unable to say which store. Officer Addington then asked Defendant for his name and date of birth, which Defendant provided. Upon later questioning, the officer estimated that he had been speaking with Defendant for roughly two minutes when Defendant provided this information. Officer Addington then ran Defendant's information on his phone while still standing near Defendant's parked car, and the search showed Defendant had a suspended driver's license and an active order of protection against him. Defendant's lack of driver's license meant that Officer Addington had seen Defendant commit a traffic violation because he had seen him driving on city streets without a license. Officer Addington also noted that Defendant seemed uncharacteristically nervous for someone who was simply driving on a suspended license. After he had determined that Defendant did not have a license, Officer Addington returned to his patrol car to determine whether Defendant had any local charges pending which he could not determine with his handheld device. During this time, Defendant remained in his vehicle. Officer Addington stated that Defendant was free to leave up until the point that he returned from his patrol car with a citation for Defendant.

While Officer Addington was back at his patrol car, Officer Steven Blake Good arrived on the scene as backup. Officer Addington explained the situation to Officer Good and advised that Defendant was acting very nervous. Officer Addington and Officer Good then approached Defendant's car together and Officer Good asked Defendant to step out of the vehicle for officer safety.[1] When Defendant began to exit the car, he reached toward the small of his back with his right hand. Officer Good then drew his weapon and ordered Defendant to stop reaching. Officer Addington then heard a thud and asked Defendant if that was a gun. At the same time, Officer Addington also looked in Defendant's car and saw a gun in the driver's seat, which they later determined was loaded. Defendant was placed under arrest for possessing a weapon while having an active order of protection against him. When Defendant was then searched incident to arrest officers discovered a bag of what appeared to be methamphetamine on his person as well as ammunition for a gun that did not match the gun found in the driver's seat. Defendant's car was then impounded because Defendant was unable to provide proof of insurance and because officers believed there might be other weapons in the vehicle that matched the caliber of ammunition Defendant was carrying on his person. While conducting an inventory search of the vehicle, the officers found an additional gun and more ammunition, along with a digital scale, baggies, syringes, bottle caps, SIM cards, and two cell phones.

b. **Testimony of Officer Steven Blake Good**

Officer Steven Blake Good ("Officer Good") has been a law enforcement officer since 2008. He was military police officer in the United States Army for seven years and went on to

---

[1] According to the testimony of the officers, even after Officer Good pulled in, Defendant could still have left because neither car blocked his exit. A map of the Americourt parking lot with the location of all three cars indicated was entered as Exhibit 4A.

work for the Washington County, Tennessee Sheriff's Department for one year and KPD for four years, and later joined the Tennessee Highway Patrol. He was still a patrol officer with KPD on October 15, 2019, when he arrived as backup to Officer Addington at the Americourt Motel. Officer Good testified about how he and Officer Addington worked together often and had an understanding that they would help each other out at certain locations due to high crime, which included the Americourt. Officer Good concurred with Officer Addington's testimony that the Americourt was a high crime area and advised it was a known location for drug use, drug sales, stolen vehicles, and prostitution. Officer Good testified that when he arrived at the Americourt Defendant's car was parked off-center in a space, and that he did not block in the vehicle. He further stated that Officer Addington was looking up information about Defendant and while doing so, told Officer Good he was concerned because Defendant was acting extremely nervous. Officer Good suggested they remove Defendant from the vehicle to make sure everyone was safe.

As was true with Officer Addington, Officer Good did not recall if either officer used a flashlight as they approached Defendant's vehicle together but stated that policy would dictate using one when approaching a person in a dimly lit area like the Americourt parking lot. Officer Good testified that Defendant's window was down when they approached the vehicle, but he could not recall whether he or Defendant opened the door for Defendant to exit the car. Officer Good provided testimony which was in keeping with that of Officer Addington as to Defendant's exit from the vehicle, the discovery of a gun in the vehicle, and the Defendant being taken into custody and his vehicle being searched. Officer Good did add that Defendant responded "yes" when Officer Addington asked if the thud they heard when Defendant was exiting the vehicle was a gun. He also explained that there is no dash or body camera footage because KPD officers did not wear

body cameras at the time of the incident and his dash camera did not begin recording because he did not activate his emergency lights which triggers the dash camera recording.

### c. Testimony of Defendant

Defendant testified on his own behalf during the hearing on his suppression motions. Defendant testified that he went to the Americourt at approximately 2:00 a.m. on October 15, 2019, to pick up his friend, Anthony Stacy, and take him to the nearest store that was open so he could get some food and drinks for himself and his children. He stated he had never been to the Americourt before and the reason he started to pull into the parking lot and then kept going on American Way was not because he saw a police car in the parking lot but rather because he was not sure if that was the correct entrance. Defendant asserted that he did not see a police car before pulling back onto American Way but ultimately determined that he had passed the entrance that he needed and made a U-turn to come back. Defendant stated that when he entered the parking lot, he began to park in the first open space by backing in, which is his common practice. Although he admitted he had over 19 grams of methamphetamine with him at the time, Defendant claimed he was not impaired and had not used any drugs since early the previous day, when he took .5 to 1 gram of methamphetamine.

Defendant testified that while he was backing into the parking space a bright light hit him in the face, obstructing his vision and forcing him to stop the car before he finished parking. Defendant then saw a police officer, which was Officer Addington, walking toward him and turned his car off as the officer was approaching. Defendant said the bright light was coming from both the officer's patrol car and the flashlight the officer was carrying. Defendant stated he had his car window cracked a couple of inches because he had just finished smoking a cigarette, but he did

not roll the window down any further to speak with Officer Addington. Defendant agreed that when he approached the car Officer Addington asked Defendant if he had time to speak with him, but Defendant claims he told the officer he did not have time to talk. Defendant explained that he did not want to speak to law enforcement because he knew he was driving without a license and had methamphetamine and guns in the car. Defendant further testified that despite declining to speak to the officer, he felt like he was going to be arrested no matter what. He said Officer Addington continued to shine his flashlight on his face and persisted in asking him questions in an investigatory manner. Defendant admits that he was nervous during the interaction because he knew he was breaking the law by possessing methamphetamine and guns. He further stated that he felt Officer Addington would use force if he did not cooperate. Defendant testified that he stayed still with his hands on the steering wheel and looked straight ahead because he was in fear for his life. Not only did Defendant state that he felt he was not free to leave but also that he felt compelled to provide his name and date of birth to Officer Addington because the officer continued to question him about his identity, asking for his name and date of birth at least four times. Defendant claimed that he finally acquiesced and provided the information because he thought if he did not, he would be forcibly removed from the car. Once Defendant gave his information to Officer Addington, he was told he would be issued a citation for driving with a suspended driver's license. Defendant testified that when Officer Addington and Officer Good told him to step out of the car he reached to unbuckle his seatbelt, which was at about mid-thigh, and one of the officers said, "He's drawing!" and the other officer was "backing him up." Defendant claimed the gun that the officers initially found was stuffed between the driver's seat and the center console and not within his reach while sitting in the driver's seat.

## III. ANALYSIS

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons…against unreasonable searches and seizures." U.S. Const. amend. IV. There are three categories of interactions between police officers and members of the public: consensual encounters where the contact is initiated by law enforcement; a temporary, involuntary detention, or *Terry* stop, which must be supported by reasonable suspicion; and arrests which are supported by probable cause. *United States v. Lewis*, 842 F. App'x 683, 688 (6th Cir. 2021) (citing *United States v. Campbell*, 486 F.3d 949, 953-54 (6th Cir. 2007)). An encounter with law enforcement becomes a seizure "when the officer restrains the person's freedom of movement 'by means of physical force or show of authority.'" *Id.* (quoting *United States v. Mendenhall*, 466 U.S. 544, 553 (1980)). To be seized, the person must surrender to the officer's show of authority. *United States v. Johnson*, 620 U.S. F.3d 685, 690 (6th Cir. 2010). Put another way, a person is seized when a reasonable person would not believe he or she was free to leave or disregard the officer's requests based on the totality of the circumstances. *Lewis*, 842 F. App'x at 688 (citing *Mendenhall*, 466 U.S. at 554). Circumstances that may indicate a seizure include "'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or a tone of voice indicating that compliance with the officer's request might be compelled.'" *Id.* (quoting *Mendenhall*, 466 U.S. at 554). Additional factors to be considered are the purpose, location, and length of questioning. *Id.* (citing *United States v. Swanson*, 341 F.3d 524, 529 (6th Cir. 2003)). It does not constitute a seizure when police officers approach individuals and ask questions and ask for identification so long as compliance is not compelled by coercive means. *United States v. Drayton*, 536 U.S. 194, 201 (2002); *see also Florida v. Bostick*, 501 U.S. 429, 434 (1991) (holding that simple police questioning is insufficient

to constitute a seizure); *United States v. Peters*, 194 F.3d 692, 698 (6th Cir. 1999) (stating police may approach and ask questions even without reasonable suspicion of criminal activity without effecting a seizure so long as they do not convey the message that compliance is required and the individual consents to questioning). However, there are certain circumstances where "words alone may be enough to make a reasonable person feel that he would not be free to leave." *Lewis*, 843 F. App'x at 689 (citing *United States v. Richardson*, 385 F.3d 625, 629 (6th Cir. 2004) (holding that in some circumstances words alone are enough to make a reasonable person feel unable to leave and finding an individual was seized after an officer asked him to "just hang out right here for me, okay?"; *United States v. Smith*, 594 F.3d 530, 534, 539 (6th Cir. 2010) (finding a seizure occurred when officers stopped the defendant and told him he would be free to leave as soon as they had determined he was not involved in illegal activity)).

Defendant argues that he was immediately seized when Officer Addington approached him because he did not feel free to leave and Officer Addington used a demanding tone of voice and persisted in asking questions even after Defendant stated he did not want to talk to him.[2] He further indicated the bright lights from the officer's police cruiser shining in his eyes and the flashlight he was shining on him added to his belief that he could not leave. Additionally, Defendant testified that because of the location of Officer Addington's vehicle, he could not actually exit the parking lot.

Despite these assertions, by his own testimony Defendant did not immediately feel compelled to comply with Officer Addington's requests for information. He says he told Officer Addington that he did not have time to speak with him and then alleges it took Officer Addington

---

[2] The Court notes that Defendant's version of events is significantly different than those recounted by Officers Addington and Good.

asking for his identity four times before Defendant finally provided it. Defendant does not contest that Officer Addington initially approached Defendant alone and did not use his weapon. During this initial encounter, the officer did not physically touch Defendant while speaking with him, explained his purpose for wanting to speak to Defendant, asked Defendant if he had time to talk, did not ask Defendant to exit his vehicle, and engaged with Defendant very briefly before obtaining Defendant's identifying information. Defendant was unable to point to any specific actions by Officer Addington that were coercive or threatening other than his claims than Officer Addington persisted in asking him questions in an "investigatory" manner after he had said he did not want to talk to him and that Officer Addington shined a light, both from his car and his flashlight, on Defendant during their encounter.

It is well-settled that police officers may approach citizens in public places and ask questions and request identification so long as they do not send the message that compliance with their requests is compelled. *Drayton*, 536 U.S. at 201; *Peters*, 194 F.3d at 698. A seizure does not occur unless a reasonable person in the defendant's position would feel that he was not free to leave under the totality of the circumstances. *Lewis*, 842 F. App'x at 688. Defendant places great weight on the use of both the "takedown lights" on Officer Addington's patrol car and his flashlight. Although the Sixth Circuit has not directly addressed whether the use of "takedown" lights constitutes a seizure, other courts have found the use of "takedown" lights or other bright lights in police encounters is not inherently coercive such that it automatically results in a seizure. *See, e.g., United States v. Tafuna*, 5 F.4th 1197, 1201 (10th Cir. 2021) (holding an officer's use of his police vehicle's takedown lights to illuminate the defendant's parked car did not constitute a seizure when the officer did not park his car so as to impede the movement of the defendant's car); *United States v. Tanguay*, 918 F.3d 1, 7-8 (1st Cir. 2019) (holding there was no seizure when an

officer used a flashlight and floodlight to illuminate the interior of an SUV); *United States v. Clements*, 522 F.3d 790, 792, 794-95 (7th Cir. 2008) (finding that officers directing their cruiser's spotlight on a parked car before approaching was not a seizure); *United States v. Washington*, 490 F.3d 756, 770 (9th Cir. 2007) (determining there was no seizure when an officer used his flashlight to illuminate the interior of the defendant's car upon approach). However, while the *Tafuna* court held that use of "takedown" or other bright lights did not constitute a seizure *per se* the court found that their use should be considered as a factor when examining the totality of the circumstances surrounding a police-citizen encounter. *Tafuna*, 5 F.4th 1197 at 1202.

While Officer Addington does not recall whether he used these lights during his encounter with Defendant, even if he had it would not have constituted a seizure under the totality of the circumstances. The use of lights is but one factor to be considered and on balance the totality of the circumstances here indicate that the defendant was not seized when he was approached by Officer Addington. The facts before the Court show that Officer Addington approached Defendant after he observed suspicious behavior in a high-crime area and in a conversational tone asked Defendant to speak with him. What ensued was a consensual, one-on-one interaction between Defendant and Officer Addington in a public place where Officer Addington did not exercise the use of any force, physically restrict Defendant's movement, or inform Defendant he was not free to leave. While Defendant claims he could not have readily exited the parking lot because of where the vehicles of Officer Addington and ultimately Officer Good were located, the Court finds that the evidence adduced at the hearing demonstrates otherwise. While Defendant's testimony, if fully credited, might well demonstrate that he was seized during his initial encounter with Officer Addington, as set forth above, the contradictory statements Defendant made regarding the encounter prevent the Court from being able to fully credit his testimony. Given the totality of the

circumstances, the Court finds that Defendant was not seized until after he had provided Officer Addington his information and the officer determined Defendant was driving on a suspended license and would be issued a citation.

When Officer Addington advised Defendant that he was going to issue a citation the consensual encounter became a seizure based on probable cause. *See United States v. Davis*, 430 F. 3d 345, 352 (6th Cir. 2005) (finding an observation of a traffic offense constitutes probable cause to detain an individual to issue a traffic warning). At this point it was constitutionally permissible for Officer Addington to detain Defendant while he wrote and issued the traffic citation. *Id.* Further, it was permissible for Officer Addington and Officer Good to ask Defendant to get out of the car for officer safety. *See Maryland v. Wilson*, 519 U.S. 408, 412 (1997) (finding that "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable seizures."). Once Defendant was asked to exit the vehicle, the officers observed a gun in plain view in the driver's seat of the car which in turn provided probable cause to arrest Defendant because he was subject to an active order of protection. Defendant's person was then permissibly searched incident to arrest. *United States v. Lay*, 13 F. App'x 265, 266 (6th Cir. 2001) (holding that "[d]uring the course of an arrest, an officer acting under probable cause may search the arrestee and any area under his or her immediate control under the search incident to arrest exception to the warrant requirement.").

During the search of Defendant, the officers found ammunition of a different caliber than the gun they recovered from the driver's seat of Defendant's vehicle, leading them to believe there might be additional weapons in the car. A search of a vehicle incident to arrest is permissible "when it is reasonable to believe evidence relevant to the crime of arrest might be found in the

vehicle." *Arizona v. Gant*, 556 U.S. 332, 343 (2009) (citing *Thornton v. United States*, 541 U.S. 614, 632 (2004)). Additionally, Officer Addington determined it would be necessary to impound Defendant's vehicle because he was unable to provide proof of insurance and KPD policy required an inventory search of the vehicle before it was towed. *See United States v. Jackson*, 682 F.3d 448, 455 (6th Cir. 2012) (observing "[i]t is settled law that the police may conduct an inventory search of an automobile that is being impounded without running afoul of the Fourth Amendment.") (citing *United States v. Smith*, 510 F.3d 641, 650 (6th Cir. 2007)). As such, Defendant was not subject to any search or seizure in violation of the Fourth Amendment.

## IV. CONCLUSION

For the reasons outlined above, the undersigned RECOMMENDS that Defendant's Motions to Suppress [Docs. 15 & 25] be **DENIED**.[3]

Respectfully Submitted,

/s Cynthia Richardson Wyrick
United States Magistrate Judge

---

[3] Any objections to this report and recommendation must be served and filed within **fourteen (14) days** after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections within the designated time waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).